529 So.2d 902 (1988)
Duncan M. NOBLE
v.
W.D. SCHEFFLER.
No. 57926.
Supreme Court of Mississippi.
July 20, 1988.
*903 F. Gerald Maples, Maples & Lomax, Pascagoula, for appellant.
William T. Reed, Pascagoula, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This land use case presents important questions ranging from the constitutionality of a portion of a county zoning ordinance to whether county zoning authorities must enforce lot size and setback restrictions and to the scope of judicial review of the granting of a land use permit. The questions arise against the backdrop of the impact of the four-laning of a road to two major highways upon fronting and theretofore residential properties.
In the end, we find the zoning ordinance quite constitutional in relevant part but direct that lot size and setback requirements be complied with. We affirm in part and reverse in part.

II.
This controversy now approaching eight years of age concerns the use of a lot on the east side of the Gautier-Vancleave Road in Gautier, Mississippi. The property is owned by Duncan M. Noble who was the use permit applicant before county zoning authorities and is the appellant here. The property carries an R-1 (single family residential) zoning. Noble seeks to use it to conduct a real estate and insurance business, a commercial use.
In October of 1980, Noble applied to the Jackson County Planning Commission for a permit which would allow him to use the property for his real estate and insurance office. On October 29, 1980, the Planning Commission recommended approval of the permit and on November 3, 1980, the Board of Supervisors of Jackson County granted it.
W.D. Scheffler, however, a resident of a nearby residential subdivision to the east of the Gautier-Vancleave Road, appealed to the Circuit Court of Jackson County, Mississippi, which on August 26, 1981, reversed, holding that the administrative proceedings "failed to comply with the zoning requirements of Jackson County ... [and should be] remanded to the Jackson County Planning Commission for further proceedings consistent with the rules and regulations of county zoning." The Circuit Court's order fails to specify wherein the prior proceedings fell short. In the present action Scheffler argues that it was Noble's failure to install a privacy fence and to *904 honor minimum lot size and setback requirements.
What happened after this is not quite clear. Apparently Noble had begun operating his real estate and insurance office once he gained approval from the Board of Supervisors. There is no indication that he ceased such activities following the August 26, 1981, order of the Circuit Court, nor did Jackson County zoning authorities take any enforcement action. Indeed, the matter appears to have been forgotten for several years.
The present chapter began on November 28, 1984, when the Jackson County Planning Commission advised Noble in writing that his operation of his real estate and insurance office in an R-1 zone was not a use permitted in that zone. Noble was given ninety days in which to cure the violation. Instead, on February 27, 1985, Noble filed another application for permission to use his property for the real estate and insurance office, without changing the R-1 zoning. Public notice of the application was given and all property owners within 500 feet were notified. Following a hearing held April 17, 1985, the Jackson County Planning Commission again approved the application. This approval was given notwithstanding the petition in opposition of dozens of property owners, most of whom appear to reside on Rolling Meadows Drive, Bayou Oaks, Scarlet Oaks, Crestwood Court and other nearby streets.
Scheffler then appealed to the Board of Supervisors whereupon a full dress hearing was held on June 10, 1985. By this time the Gautier-Vancleave Road had been four-laned. This road had become a major thoroughfare connecting U.S. Highway 90 and Interstate Highway I-10. Immediately north of the subject property on the east side of the Gautier-Vancleave Road is the United Pentecostal Church whose pastor filed a letter stating that the church had no objection to Noble's requested use permit. Three single family residences front on Vancleave Road to the south of Noble's property. Immediately across on the west side of the street is school property zoned A-1. Somewhat to the south and also on the west side of the new four-lane road is the Gautier Post Office and First Southern Savings and Loan Association office. A convenience store has also been located in the area.
After all had been heard, including Scheffler appearing through counsel, the Board of Supervisors approved Noble's use permit application by a vote of four to one.
Scheffler again appealed to the Circuit Court of Jackson County. After briefing and oral argument, the Circuit Court on June 23, 1986, again reversed. The grounds of the reversal appear twofold: First, the use permit would violate Jackson County zoning ordinances "regarding yard setback lines, lot width, and screening provisions, ... ." Second, the Court held that the section of the Jackson County Zoning Ordinance under which the permit had purportedly been issued was
not uniform and equal in operation and effect, and, according, same is invalid and unconstitutional.
Noble now appeals to this Court.

III.
Before considering the assignments of error, note should be had of the relevant provisions of the Jackson County Zoning Ordinance. The Board of Supervisors of Jackson County, Mississippi, in July of 1969 adopted "An Ordinance Establishing Comprehensive Zoning Regulations for Jackson County, Mississippi," though we are told it has now been amended  in respects not relevant today.
Classification R-1 (single family residential) specified six uses which were permitted without further action. Section 2.3 of the Ordinance itemizes a number of "Uses Permitted On Review By The Planning Commission." These are uses which property owners may put their property to only after receiving a permit from the Planning Commission and after complying with certain public hearing procedure requirements (concerning which no issue is raised). In any event, among the uses which may be allowed on permit are:

*905 (j.) Neighborhood commercial uses, as shown in the C-1 District, and with area and setback regulations of the C-1 District.
Zoning Classification C-1 (neighborhood commercial) contains an itemization of permitted uses. Among these are "offices, professional and service." No one questions that the sort of real estate and insurance office Noble desires to operate fits within this description.
But Section 2.3(j) requires conformity with area and setback regulations as well. For this we turn to the C-1 classification where we find that Zoning Reg. § 6.4 provides as follows:
Yards
Front:
a minimum of thirty-five (35) feet
Side:
No side yards are required except in instances where a commercial use abuts a residential district, in which case a minimum side yard of forty (40) feet shall be provided, as measured from the side lot line to the nearest building or structure on the side adjacent to the residential district. Such space shall be screened from the abutting residential district by walls or by fences or by other screening not less than five (5) feet in height, in a manner acceptable to the County Planning Commission.
Rear:
No rear yard shall be required except in instances where a commercial use abuts a residential district, in which case a rear yard of not less than thirty-five (35) feet shall be provided. Such space shall be screened from the abutting residential district by walls or by fences or by other screening not less than five (5) feet in height, in a manner acceptable to the County Planning Commission.
Lot Width:
a minimum of one hundred feet
Without contradiction the structure on Noble's property being used as his office has yard setback and lot width as follows:
(a) 21.3 feet front yard setback;
(b) 25 feet side yard setback; and
(c) 90 feet lot width.
No provision has been made for screening from abutting residential districts by walls or fences. All of this presents a problem to which we will return in Section VI below.

IV.
The Circuit Court held that Reg. § 2.3(j) of the Jackson County Zoning Ordinance was unenforceable consistent with the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The Circuit Court's reasoning was that the ordinance failed to "prescribe a uniform rule or standard to govern the grant or denial of use permits." The only authority cited in support of this view is McQuillin, Municipal Corporations, §§ 25.61, 25.614 and 25.615 (3d ed. 1983).
We quite agree that standards or rules are the essence of law and, conversely, that the vesting of unbridled discretion in public officials is the antithesis of law.
On the other hand, the day is long past when we thought it constitutionally necessary  or even possible  that the authority of decision-makers be hemmed in by hard edged, formalistic rules susceptible of mechanical application. Discretion, albeit not unbridled discretion, has become the hallmark of the day.
The principles according to which the Jackson Planning Commission and the Board of Supervisors are to exercise use permit authority under Zoning Reg. § 2.3(j)  or, for that matter, according to any other subsection of Reg. § 2.3  are stated in Reg. § 2.1. In relevant part these read:
These areas are intended to be defined and protected from the encroachment of uses not performing a function appropriate to the residential environment. Internal stability, attractiveness, order and efficiency are encouraged by providing for adequate light, air and open space for dwellings and related facilities and through consideration of the proper functional relationships of each element.
*906 Courts around the country have generally upheld ordinances delegating permit powers to zoning boards under very broad standards. 6 Rohan, Zoning and Land Use Controls § 44.03[1] (1987); 3 Anderson, American Law of Zoning 3d, § 21.09, pp. 651-54 (1986); 8 McQuillin, Municipal Corporations 515 (3d ed. 1983). Those just stated pass constitutional muster, for as we have said in Fowler v. City of Hattiesburg, 196 So.2d 358 (Miss. 1967):
... [E]very intendment is to be made in favor of the reasonableness of the exercise of municipal police power in making regulations. Unless the ordinance is clearly invalid, the courts will not so declare.
196 So.2d at 362.
Beyond this, Reg. § 2.3(j) includes the uses with area and setback regulations of the C-1 (neighborhood commercial) classification. A careful perusal of C-1 restrictions and particularly Reg. §§ 6.2 and 6.4 reveals a detailed itemization of the types of uses permitted and the area and setback regulations. Of course, these are uses automatically permitted on properties zoned C-1. No one would suggest they were unconstitutional in that regard. How they become unconstitutional when allowed as uses that may be permitted on review by the Planning Commission consistent with the general policy for use of land in R-1 classification escapes us.
Further protection against the arbitrary exercise of the use permit power is Zoning Ordinance, Article VII, § 2 prescribing the public hearing procedure, i.e., fifteen days advance public notice, the right of objectors to appear and be heard, and the like.
In sum, we find in Zoning Reg. § 2.3(j) no violation of anyone's equal protection rights  indeed, one of the deficiencies in the Circuit Court's ruling is its failure to specify whose equal protection rights were being violated: Duncan M. Noble as the party to whom the ordinance has been applied certainly makes no complaint. W.D. Scheffler has no claim that he has been treated unequally. So much of the judgment below as holds Reg. § 2.3(j) of the Jackson County Zoning Ordinance or any other portion thereof unconstitutional is reversed.

V.
Our next question is whether there are legally cognizable grounds for judicial interference with the decision of Jackson County Zoning authorities that Duncan M. Noble be granted a permit to use his property for a real estate and insurance office. Critical to this inquiry is identification of our scope of review.
The criteria for judicial review of zoning decisions is well established. Courts may not interfere with the lawful prerogatives of zoning authorities unless the decision to grant a special use permit may only be characterized as arbitrary and capricious. See Cowan v. Gulf City Fisheries, Inc., 381 So.2d 166, 167 (Miss. 1980) (relying on Cowan v. Gulf City Fisheries, Inc., 381 So.2d 158, 162 (Miss. 1980)); cf. Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987); Board of Aldermen of City of Clinton v. Conerly, 509 So.2d 877, 885 (Miss. 1987); Woodland Hills Conservation Association, Inc. v. City of Jackson, 443 So.2d 1173, 1180 (Miss. 1983); see generally 8 McQuillin, Municipal Corporations 359 (3d ed. 1983); and 6 Rohan, Zoning and Land Use Controls § 44.02[2][e] (1987). In other words, where the evidence, information and other relevant factors before the zoning authorities render the question, whether the property should be used as the authorities have permitted, one upon which reasonable minds might disagree, the administrative judgment of the zoning authorities is insulated from judicial interference. Cf. Woodland Hills Conservation Association, Inc. v. City of Jackson, 443 So.2d 1173, 1180 (Miss. 1983).
The major factual development impacting upon this zoning decision has been the four-laning of the Gautier-Vancleave Road. It takes little awareness of the world to realize that this not only rendered residential use of the lands abutting the new four-lane thoroughfare less desirable, it signaled the almost certain advent of commercial activity which in fact has occurred, ranging from a new post office, a *907 savings and loan office, to a convenience store. Consistent with the general standards for Zoning Reg. § 2.1 recited above, Jackson County zoning authorities were well within their prerogatives in granting Noble a permit to use his property to conduct a real estate and insurance business. While the argument for allowing such use may not on these facts have been conclusive, the point was certainly fairly debatable, which is sufficient to insulate it from judicial review.
The judgment of the Circuit Court is vacated insofar as it ordered reversal of the order of the Board of Supervisors which had granted Noble permission to use his property for a real estate and insurance office. By the same token, the Board of Supervisors' decision in this regard is reinstated.

VI.
But this does not end the lawsuit. We still have the matter of the C-1 area and setback requirements.[1]
To review briefly, Zoning Reg. § 6.4 requires for C-1 professional office usages a minimum front yard setback of 35 feet, a minimum side yard setback of 40 feet and the erection of a five foot high fence between the property and any adjoining residential properties. The minimum lot width is set at 100 feet.
By way of contrast, the evidence reflects that the Noble property and the improvements located thereon violate these requirements in at least four respects. The front yard setback is only 21.3 feet, some 13.7 feet less than what is required. The side yard setback is only 25 feet and the lot width is only 90 feet. Furthermore, there is no screening from the abutting residential district by walls or fences.
We have held that the Jackson County Zoning authorities had the authority to grant Noble a permit to use his property for a real estate and insurance office. In the present state of the record and proceedings before it, however, they did not have the authority to allow Noble to deviate so completely from the yard area and setback rules. Suffice it to say that local zoning authorities may not ignore but must abide by the restrictions of all applicable zoning ordinances. See Robinson v. Indianola Municipal Separate School District, 467 So.2d 911, 917 (Miss. 1985); Kynerd v. City of Meridian, 366 So.2d 1088 (Miss. 1979).
To be sure, the Zoning Ordinance empowers the Jackson County Zoning authorities to grant special exceptions from the strictures of the ordinance. See Article VII, §§ 2 & 10, Jackson County Zoning Ordinance. That procedure requires not only the same advance notice and hearing requirement as is the case with the use permit generally but also requires that the Planning Commission make certain findings which heretofore have not been made. See Article VII, § 10(a)(2).
In sum, although we have held that the Jackson County Board of Supervisors had the authority to grant Noble the use permit he requested, on this record the Board had no authority to grant special exceptions from the area and setback provisions of Reg. § 6.4. Accordingly, in the present state of the matter, Noble has no lawful authority to operate his real estate and insurance office out of the premises and structure thereon as they presently exist.
We remand this case to the Circuit Court with instructions that the matter be further remanded to the Board of Supervisors of Jackson County for such proceedings as may be lawful and appropriate for the purposes of determining whether Noble should be granted special exceptions from the area and setback requirements of Reg. § 6.4.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED; REVERSED IN PART AND REMANDED.
*908 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Noble complains that the question of his violation of the area and setback requirements has not been timely raised. The point is specious. The record reflects that this was an issue in the initial use permit application back in 1980. He certainly was on notice that this was a concern at that time. Although the record does not reflect that it was considered in the 1985 reapplication, it was certainly heavily litigated before the Circuit Court on appeal. We regard the issue ripe for determination on its merits.